## IN THE UNTED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHELLE BRANDT | : | |
| 92 N. Main Street | : | |
| Dover, PA 17315 | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO.:  2:21-cv-1006 |
| | : | |
| v. | : | |
| | : | |
| BOSPHORUS ENTERPRISES, INC. | : | |
| 1011 4th Avenue | : | |
| Coraopolis, PA 15108 | : | **JURY TRIAL DEMANDED** |
| | : | |
| Defendant. | : | |

## CIVIL ACTION COMPLAINT

Michelle Brandt (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) by and through her undersigned counsel, hereby avers as follows:

## INTRODUCTION

1.      Plaintiff has initiated this action to redress violations by Bosphorus Enterprises, Inc. (*hereinafter* "Defendant") of Title VII of the Civil Rights Act of 1964, ("Title VII" – 42 U.S.C. §§ 2000d *et. seq.*), the Pregnancy Discrimination Act ("PDA"), the Americans with Disabilities Act ("ADA" - 42 USC §§ 12101 *et seq.*), the Family and Medical Leave Act ("FMLA" - 29 U.S.C. §§ 2601 *et seq.*), and the Pennsylvania Human Relations Act ("PHRA")[1], the Families First Coronavirus Response Act ("FFCRA" - Pub. L. No. 116-127, 134 Stat. 178 (2020)) and the Fair

---

[1] Plaintiff's claim under the PHRA is referenced herein for notice purposes. She is required to wait 1 full year before initiating a lawsuit from date of dual-filing with the EEOC. Plaintiff must however file her lawsuit in advance of same because of the date of issuance of her federal right-to-sue letter under Title VII/PDA and the ADA. Plaintiff's PHRA claims however will mirror identically her federal claims under Title VII/PDA and the ADA, except that Plaintiff will also include Upendra Panjiyaar as an individual Defendant as his discriminatory conduct towards Plaintiff renders him individually liable under the PHRA.

Labor Standards Act ("FLSA" - 29 U.S.C. § 201 *et. seq.*).  As a direct consequence of Defendant's

unlawful actions, Plaintiff seeks damages as set forth herein.

<u>**JURISDICTION AND VENUE**</u>

2.      This Court has original subject matter jurisdiction over the instant action pursuant

to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks

redress for violations of federal laws.

3.      This Court may properly assert personal jurisdiction over Defendant because its

contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over

Defendant to comply with traditional notions of fair play and substantial justice, satisfying the

standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S.

310 (1945), and its progeny.

4.      Pursuant to 28 U.S.C. § 1392(b)(1) and (b)(2), venue is properly laid in this district

because Defendant is deemed to reside where it is subjected to personal jurisdiction, rendering

Defendant a resident of the Western District of Pennsylvania.

<u>**PARTIES**</u>

5.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in

full.

6.      Plaintiff is an adult individual, with an address as set forth in the caption.

7.      Bosphorus Enterprises, Inc. is an authorized retailer of Cricket Wireless products

and services with approximately 21 locations in Pennsylvania and 14 locations in Ohio.  Defendant

is headquartered at the address set forth in the above-caption.

8.      At all times relevant herein, Defendant acted by and through its agents, servants

and employees, each of whom acted at all times relevant herein in the course and scope of their

employment with and for the Defendant.

## FACTUAL BACKGROUND

9.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

10.     Plaintiff was employed with Defendant from approximately January 22, 2020 until her unlawful termination (discussed further *infra*) on or about January 27, 2021.

11.     Plaintiff was originally hired by Defendant as a full-time Sales Associate/Representative in Defendant's York Pennsylvania store.

12.     However, due to her outstanding performance, Plaintiff was promoted to Store Manager of Defendant's York Pennsylvania location in mid-2020.

13.     As of the time of her promotion in 2020, Plaintiff was primarily supervised by Defendant's Regional Manager, Upendra Panjiyaar (*hereinafter* "Panjiyaar").   Panjiyaar remained Plaintiff's Manager through the time of her termination.

14.     Throughout her employment with Defendant, Plaintiff was a hard-working employee who performed her job very well. Moreover, Plaintiff did not have a disciplinary history with Defendant.

15.     In or about July of 2020, Plaintiff notified Defendant's management, including but not limited to Panjiyaar, that she was pregnant and due to give birth in March of 2021. During that same time, Plaintiff advised Panjiyaar that she would require maternity leave in March of 2021.

16.     Plaintiff's aforesaid pregnancy was considered high-risk for the follow reasons:

    i.   She suffered from severe vomiting;

    ii.   Had a history of high-risk pregnancies and complications;

    iii.   She was diagnosed with preeclampsia; and

    iv.   She experienced significant cramping and vaginal bleeding during her pregnancy.

3

17.    As a result of her high-risk pregnancy and complications, Plaintiff's required time off on occasion. In particular, Plaintiff was hospitalized on two occasions during her pregnancy while employed with Defendant.

18.    However, Plaintiff always made sure that her time off was covered so that there was no disruption during her absences.

19.    Defendant's management, including Panjiyaar, was apprised of Plaintiff's aforesaid pregnancy complications and need for occasional time off.

20.    In addition to needing time off related to her pregnancy, on November 17, 2020, Plaintiff was advised that her children had come into close contact with an individual who tested positive for COVID-19 at the daycare center they attended. As a result, Plaintiff was advised that her children would need to stay home from the center for 14 days and quarantine.

21.    Upon being informed of this, Plaintiff immediately reached out to Panjiyaar and informed him that she was required to stay home and quarantine with her children as a result of the possible COVID-19 exposure and due to a lack of childcare while her children were not permitted to attend daycare.

22.    Despite being on notice that Plaintiff was unable to work because she had to quarantine and care for her children as a result of the COVID-19 pandemic, Defendant failed to offer Plaintiff emergency sick leave through the Emergency Paid Sick Leave Act under the FFCRA.

23.    Furthermore, despite being on notice that Plaintiff was unable to work because she had to quarantine and care for her children due to a lack of child care as a result of the COVID-19 pandemic, Defendant also failed to advise Plaintiff of her rights under the FCCRA's Emergency Family and Medical Leave Expansion Act.

24.     In addition to the foregoing violations of the FFCRA and FMLA, Defendant also never designated Plaintiff's time off as protected leave under the FFCRA/FMLA, despite that fact that Plaintiff was an "eligible employee" and legally qualified for same.

25.     Therefore, Defendant failed to follow proper notice, designation, and informational regulations of the FFCRA/FMLA Expansion.

26.     In response to Plaintiff's need for time off related to her pregnancy, as well as the two weeks Plaintiff required off due to her need to quarantine and care for her children due to possible COVID-19 exposure, Panjiyaar was extremely hostile and discriminatory towards Plaintiff's legally protected time off.

27.     Specifically, following Plaintiff's need for time off in November to care for her children and following Plaintiff taking time off for her pregnancy complications, Panjiyaar informed Plaintiff that she was undependable as a Store Manager and demoted her to Sales Associate/Representative in late November/early December of 2020. Plaintiff was thereafter reassigned to Defendant's Red Lion store.

28.     Plaintiff demotion resulted in a substantial loss to her compensation (through a loss of hours and separately a loss of substantial commissions).

29.     On or about January 27, 2021, Plaintiff sent a text message to Panjiyaar updating him on her schedule as she was approximately two months away from her due date. In that message Plaintiff conveyed that she would be able to work all scheduled hours up until she gave birth to her child.

30.     In response to Plaintiff's message, Panjiyaar pointblank informed Plaintiff that he was reducing her hours to part-time and that he was doing so ***because of Plaintiff's pregnancy.*** Panjiyaar further informed Plaintiff that his business gets hurt when Plaintiff calls off, which was

a clear reference to Plaintiff's need for time off related to both her pregnancy and when Plaintiff was required to care for her children due to possible COVID-19 exposure and lack of childcare.

31.     In response to Panjiyaar's blatantly discriminatory action, Plaintiff objected and stated that she could not afford to work part-time hours, was able to continue working full-time, that his actions were discriminatory and illegal and that she would be seeking legal advice about his discrimination towards her on the basis of her pregnancy.

32.     In direct response to Plaintiff's complaint and her statement that she would get a lawyer to address his discrimination towards her pregnancy, Panjiyaar responded in text message that Plaintiff was fired. Plaintiff was therefore without question a victim of discrimination and retaliation.

33.     Plaintiff believes and therefore avers that she was unlawfully demoted, had her hours and compensation reduced and was ultimately discharged from her employment with Defendant because of her pregnancy, pregnancy-related complications, and/or her complaints of discrimination.

34.     Plaintiff also believes and therefore avers that Defendant willfully (1) failed to inform her of her individualized FMLA/Emergency Family and Medical Leave Expansion Act rights (established by FFCRA), which constitutes a failure to follow proper notice, designation, and information regulations of the FMLA; and (2) demoted her, reduced her hours and terminated her in retaliation for exercising her rights under the FFCRA (which incorporates the retaliation provisions of the FMLA and the FLSA).

**Count I**
**Violations of Title VII/PDA**
**([1] Pregnancy/Sex Discrimination; [2] Retaliation)**

35.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

36.     Defendant is an "employer" within the meaning of Title VII/PDA because, at all times relevant herein, Defendant employed at least fifteen (15) or more employees for at least 20 weeks during each calendar year of Plaintiff's employment with Defendant.

37.     After apprising Defendant's management of her pregnancy in or about July of 2020 and after requiring time off related to pregnancy complications, Plaintiff was subjected to discrimination and adverse employment actions, including being demoted, having her hours reduced and ultimately being terminated in January of 2021.  These actions were undeniably taken towards Plaintiff because of her pregnancy (discussed *supra*).  In fact, Panjiyaar specifically advised Plaintiff that these actions were occurring because of her pregnancy.

38.     Plaintiff complained to Panjiyaar that he was discriminating against her on the basis of her pregnancy and further advised him that she would get an attorney to address his illegal and discriminatory treatment towards her. In direct response to Plaintiff's complaint, Panjiyaar advised Plaintiff that she was terminated.

39.     Plaintiff believes and therefore avers that she was unlawfully demoted, had her hours and compensation reduced and was ultimately discharged from her employment with Defendant because of her pregnancy, pregnancy-related complications, and/or complaints of discrimination.

40.     These actions as aforesaid constitute violations of Title VII/PDA.

**COUNT II**
**Violations of the Families First Coronavirus Response Act ("FFCRA") &**
**the Fair Labor Standards Act ("FLSA")**
**([1] Wrongful Termination & [2] Retaliation)**

41.     The foregoing paragraphs are incorporated herein as if set forth in full.

42.     Effective April 1, 2020, the FFCRA provides for up to 80 hours of paid sick time to eligible full-time employees who are unable to work or telework due to the effects of COVID-19 through the Emergency Paid Sick Leave Act.  *See* FFCRA, at §§ 5102(a) and (b)(A).

43.     The FFCRA has expressly identified that enforcement of and all penalties arising from violations of the Emergency Paid Sick Leave Act shall be governed by relevant sections of the FLSA, as set forth in more detail below.

44.     Defendant is engaged in an industry affecting commerce and employees, is a private entity, and employs fewer than 500 employees.  *Id.* at § 5110(2)(B)(aa).

45.     Plaintiff was an eligible employee as defined by Section 3(e) of the FLSA (29 U.S.C. §  203(e)), who had been "caring for a son or daughter of such employee if the school or place of care of the son or daughter has been closed, or the child care provider of such son or daughter is unavailable, due to COVID-19 precautions," *see* the FFCRA, § 5102(a)(5).

46.     Defendant knew that Plaintiff was an eligible employee within the meaning of the FLSA and the FFCRA.

47.     Plaintiff was eligible for/requested paid sick leave for the two-week period beginning in November, 2020 as a result of Plaintiff being unable to work due to caring for her children related to the COVID-19 pandemic (discussed *supra*).

48.     It is unlawful for any employer to discharge, discipline, or in any other manner discriminate against any employee" who exercises his rights to "take leave in accordance with this

8

Act." *Id.* at § 5104. "An employer who willfully violates section 5104 shall . . . be considered to be in violation of section 15(a)(3) of the Fair Labor Standards Act of 1938 (29 U.S.C. § 215(a)(3))." *Id.* at § 5105(b)(1).

49.     Additionally, an employer who in any way disciplines, discriminates or retaliates against, and/or discharges an employee in violation of this Act is subject to the penalties described in sections 16 and 17 of the FLSA (29 U.S.C. § 216, 217) with respect to such violation. *Id.* at § 5105(b)(2). Penalties under sections 16 and 17 of the FLSA include, but are not limited to, lost wages, an equivalent amount of liquidated damages, and attorney's fees and costs. *See* FLSA, 29 U.S.C. § 216; 217.

50.     Defendant willfully (1) failed to inform Plaintiff of her rights pursuant to the Emergency Paid Sick Leave Act under the FFCRA; (2) demoted her in direct response to her need for leave under FFCRA; and (3) terminated her in retaliation for her request for emergency paid sick leave pursuant to the FFCRA/FLSA.

51.     These actions as aforesaid constitute violations of the FFCRA and the FLSA.

## COUNT III
## Violations of the Families First Coronavirus Response Act ("FFCRA") & the Family and Medical Leave Act ("FMLA")
### ([1] Retaliation & [2] Interference)

52.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

53.     Effective April 1, 2020, the FFCRA provides for paid leave through the Emergency Family and Medical Leave Expansion Act to eligible employees who are "unable to work (or telework) due to a need for leave to care for the son or daughter under 18 years of age of such employee if the school or place of care has been closed, or the child care provider of such son or

9

daughter is unavailable, due to a public health emergency" (such as the COVID-19 pandemic). *See* FFCRA, § 3102(b).

54.     The FFCRA has expressly identified that enforcement of and all penalties arising from violations of the Emergency Family and Medical Leave Expansion Act shall be governed by amendments to relevant sections of the FMLA, as set forth below.

55.     Plaintiff was an eligible employee under the amended definitional terms of the FMLA, as one "who has been employed for at least 30 calendar days by the employer with respect to whom leave is requested under [29 U.S.C.A. § 2612 (a)(1)(F)]." *Id.* at § 3102(b).

56.     Plaintiff requested leave for a "qualifying need related to a public health emergency," from her employer, with whom she had been employed for at least 30 calendar days. *Id.*

57.     Defendant is engaged in an industry affecting commerce and employs fewer than 500 employees for each working day during each of 20 or more calendar workweeks in the current or proceeding calendar year. *Id.*

58.     Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A. § 2612 (a)(1)(F) on a block or intermittent basis. *Id.* at § 3102(a)(1).

59.     Plaintiff's block time off to care for her children a result of the COVID-19 pandemic constituted FFCRA/FMLA-qualifying leave.

60.     Plaintiff was clearly retaliated against in violation of the FFCRA/FMLA, as she demoted in direct response and was terminated shortly after requesting/utilizing FMLA-qualifying expanded leave.

61.     Defendant committed interference and retaliation violations of the FFCRA/FMLA by: (1) demoting/terminating Plaintiff for requesting and/or exercising her FFCRA/FMLA rights and/or for taking FMLA-qualifying leave; (2) considering Plaintiff's FFCRA/FMLA leave needs

in making the decision to demote/terminate her; (3) failing to inform Plaintiff of her individualized FFCRA/FMLA rights, which constitutes a failure to follow proper notice, designation, and information regulations of the FMLA; (4) demoting/terminating Plaintiff to intimidate her and/or prevent her from taking FFCRA/FMLA-qualifying leave in the future; (5) making negative comments and/or taking actions towards Plaintiff that would dissuade a reasonable person from exercising her rights under the FFCRA/FMLA; and (6) failing to designate Plaintiff's request for block time off as FFCRA/FMLA-qualifying or protected leave.

62.     These actions as aforesaid constitute violations of the FFCRA and the FMLA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.     Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B.     Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C.     Plaintiff is to be awarded liquidated damages and/or punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D.     Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation); and

E.     Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

11

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:     _____

Ari R. Karpf, Esq.
3331 Street Rd.
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated:  July 29, 2021